IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TOMMY L. MORRIS,
      Plaintiff,

vs.                              Case No.:  5:14cv211/WS/EMT

SGT. K.N. BAKER,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Tommy L. Morris ("Morris"), an inmate of the Florida Department of Corrections ("FDOC"), proceeds pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983. Morris sues Sgt. Kenneth N. Baker, an FDOC correctional officer, claiming that Baker violated his Eighth Amendment rights by failing to honor his medical pass to be housed in a lower tier cell with a cell mate, due to Morris' susceptibility to seizures (*see* ECF No. 51). Morris sues Defendant in his individual capacity only (*see id.* at 7). Presently before the court is Defendant Baker's Motion to Dismiss (ECF No. 66). Defendant seeks dismissal of the complaint on the ground that Morris failed to exhaust available administrative remedies prior to filing this lawsuit (*id.*). Morris responded in opposition to the motion (ECF No. 71).

I.      BACKGROUND and INTRODUCTION

In the Fourth Amended Complaint (ECF No. 51), which is the operative pleading, Morris alleges that on June 27, 2014, he was assigned to J-dormitory, quad 3, cell 3102, which was a cell on a lower tier of the dormitory (*id.* at 5). He alleges Defendant Sgt. Baker was the officer in charge of the housing unit (*id.*). Morris alleges Baker placed him in administrative/disciplinary confinement and moved him to quad 1, cell 212, which is a cell on the upper tier of the dormitory, despite Baker's awareness that Morris was a "seizure patient," and had a medical pass to be assigned to a lower bunk in a lower tier with a cell mate (*id.*). Morris alleges that on July 11, 2014, he was

released from disciplinary confinement and returned to quad 3, but Sgt. Baker housed him alone in cell 3204, which is on the upper tier (*id.* at 6, 8). He alleges he showed Sgt. Baker his medical pass, and Baker had his own copy of the medical pass in his office, but Baker still housed him alone in an upper tier cell (*id.* at 6). Morris alleges that at least three cells on the lower tier were available with only one inmate in each, including his old cell, J3-3102 (*id.*). He alleges Sgt. Baker told him that if he did not like his housing assignment, he could file a grievance (*id.*). Morris alleges that on July 16, 2014, Baker again moved him to quad 1, cell 212, which is on the upper tier (*id.* at 8). Morris alleges the FDOC's housing logs will verify that: (1) on June 27, he was housed on an upper tier; (2) on July 11, he was housed on an upper tier and alone; and (3) on July 16, he was housed on an upper tier (*id.* at 6, 8).

Morris further alleges that on August 11, 2014, he declared a medical emergency because he was dizzy and felt faint (ECF No. 51 at 5, 9). He alleges two officers handcuffed him to take him to the medical department (*id.* at 9). Morris alleges the next thing he recalls is waking up face down and in pain on the floor of the lower tier (*id.*). He alleges he was later told he fainted and fell down the stairs while handcuffed behind his back (*id.*). Morris was told he hit the floor very hard and had a seizure (*id.*). Morris alleges he was unable to move due to the pain running through his neck and lower back (*id.*). He alleges he was escorted to the medical department on a stretcher (*id.*). Morris alleges even after his fall, security staff housed him in an upper tier cell (*id.* at 10). He alleges he filed several informal and formal grievances regarding security staff's disregard of his medical pass, and on August 14, 2014, he was finally and permanently moved to a lower tier cell (*id.*).

Morris alleges that as a result of his fall down the stairs, he suffered physical pain and permanent injuries to his lower back and left knee, for which he is still receiving medical treatment (ECF No. 51 at 6, 10). He alleges he also suffered psychological damage and mental anguish (*id.* at 6).

Morris claims that Defendant Sgt. Baker violated the Eighth Amendment by deliberately housing him under conditions that were prohibited by his medical pass and posed a substantial risk of serious harm to his health and safety (ECF No. 51 at 7). Morris seeks compensatory and punitive damages in the amount of $200,000.00 from Defendant Baker in his individual capacity (*id.*).

Defendant Baker requests dismissal of this action on the ground that Morris failed to completely exhaust his administrative remedies prior to filing suit, which is a precondition to filing a § 1983 lawsuit, pursuant to 42 U.S.C. § 1997e(a) (ECF No. 66). As explained below, the court concludes that Morris exhausted his available administrative remedies with respect to his claim. Therefore, Defendant Baker's motion to dismiss should be denied.

## II.      EXHAUSTION STANDARD

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a § 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "'[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.'" Bryant v. Rich, 530 F.3d 1368, 1372–73 (11th Cir. 2008) (quoting Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005)). Exhaustion of administrative remedies serves two main purposes: first, it protects administrative agency authority, in that it gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures; and, second, it promotes efficiency, in that claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. Woodford v. Ngo, 548 U.S. 81, 88–89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).

The PLRA requires "proper exhaustion" that complies with the "critical procedural rules" governing the grievance process. Ngo, 548 U.S. at 95. "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (quoting Woodford, 548 U.S. at 88). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id.

"A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322–23 (11th Cir.

2007)). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." *Id.*

"[A] defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." <u>Turner</u>, 541 F.3d at 1082. "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id.* "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*

Second, "[i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." <u>Turner</u>, 541 F.3d at 1082 (citing <u>Bryant</u>, 530 F.3d at 1373–74). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (citing <u>Jones</u>, 549 U.S. 199); <u>Roberts v. Barreras</u>, 484 F.3d 1236, 1240 (10th Cir. 2007)). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

In Florida, generally, a prisoner must: (1) file an informal grievance with a designated prison staff member on Form DC6-236; (2) file a formal grievance with the institution's warden on Form DC1-303; and then (3) submit an appeal to the Central Office of the Secretary on Form DC1-303. *See* <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code rr. 33–103.005–103.007).

Informal grievances must be received by the reviewing staff member "within a reasonable time" of when the incident or action being grieved occurred. *See* Fla. Admin. Code r. 33-103.011(1)(a). The reviewing staff member must provide the inmate with a written response to the informal grievance within 10 days. *See id.*, 33-103.011(3)(e); *see also* 33-103.005(4). An inmate may bypass the informal grievance step and file a direct formal grievance if the grievance is of a certain nature, for example, a grievance of a medical nature. *See* Fla. Admin. Code rr. 33-103.005(1); 33-103.006(3). A formal grievance must be received by the warden, assistant warden,

or deputy warden no later than 15 calendar days from (1) the date of the response to the informal grievance, or (2) the date on which the incident or action being grieved occurred, if the grievance is a direct formal grievance. *See* Fla. Admin. Code r. 33-103.011(1)(b). The warden, assistant warden, or deputy warden must respond to the grievance within 20 calendar days following receipt of the grievance. *See id.*, 33-103.011(3)(b). In the event that an inmate feels that the grievance has not been satisfactorily resolved during the formal grievance procedure, the inmate may submit an appeal to the Office of the Secretary ("Central Office"). *See id.*, 33-103.007(1). Grievance appeals to the Central Office must be received within 15 calendar days from the date of the response to the formal grievance. *See* Fla. Admin. Code r. 33-103.011(1)(c). The Central Office must respond to the grievance appeal within 30 calendar days from the date of receipt of the grievance. *See id.*, r. 33-103.011(3)(c). Unless the inmate has agreed in writing to an extension of the time limit for responding to grievances and appeals, expiration of a time limit at any step in the process entitles the inmate to proceed to the next step of the grievance process. *See* Fla. Admin. Code r. 33-103.011(4).

A grievance (i.e., an informal grievance, formal grievance, or grievance appeal) may be returned to the inmate without further processing if, following a review of the grievance, the grievance does not have the required attachments; for example a formal grievance must attach the informal grievance and the response, and a grievance appeal to the Central Office must attach the formal grievance and response. *See* Fla. Admin. Code rr. 33-103.014(1)(g). An inmate who has a grievance returned to him for this reason may correct the deficiency and refile if the refiling is within the allowable time frames. *See id.*, r. 33-103.014(2). When a grievance is returned to an inmate for being improperly filed, the inmate shall be told why the grievance was returned and told that in order to receive administrative review of his complaint he must correct the defects and resubmit the grievance within the time frames set forth in Rule 33-103.011, unless instructed otherwise in the grievance response. *See id.*

## III.    ANALYSIS

Morris asserts that on July 25, 2014, and July 28, 2014, he filed two informal grievances concerning security staff's failure to honor his medical pass (*see* ECF No. 51 at 8; ECF No. 71 at

1). Morris states he did not receive a response to either informal grievance within fifteen days; therefore, he proceeded to the next level of the grievance process by filing a formal grievance on August 10, 2014, grievance log #1408-125-022 (*see* ECF No. 71 at 1–2, Ex. C).[1]  Defendant Baker asserts that Morris was not required to file an informal grievance, because his grievance was of a medical nature; therefore Morris could proceed directly to the formal grievance level (*see* ECF No. 66 at 5).  There is no dispute that the institution received formal grievance log #1408-125-022 on Monday, August 11, 2014 (*see* ECF No. 66 at 5, Exs. A, B).

There is also no dispute that Morris stated the following in formal grievance log #1408-125-022:

> I'm submitting this grievance in regards to my medical pass not being honored on numerous ocassions [sic]!  Records will reflect that for the month of May 21st [sic] I was housed here in J1-212 upper tier.  Also on June 27th I was once again housed here in J1-212 upper tier!  On July 11 I was housed in J3-204 upper tier, and also housed alone for (5) days when my medical pass clearly states "no housing alone."  On July the 16th I was once against housed in J1-212 upper tier.  Also on this day & date 8-10-14, August the 10th 2014 I am currently still housed in J1-212 upper tier when I have a valid medical pass that's good until 2-19-15 that says "lower tier" and "no housing alone."  I've brought this to many staff members' attention only to get "negative" results, like "get your ass off my door" and "get on your bunk befor [sic] I give you something that will really make you dizzy, it's called GAS."  I have obeyed all orders given to me and will not say anything more to any staff about this medical indifference.  I have also decided to write this grievance concerning this incident and will only hope that no retaliation will come upon me by any of your confinement staff and others for writing this grievance as I had no other choice in this matter.  Since I've been on the top tier, I've constantly been dizzy and lightheaded, especially when I'm going to and coming from the shower, also when I go to call-outs etc.  I'm requesting that you please look into this matter and resolve it please.  Thank you.

(ECF No. 66, Ex. A; ECF No. 71, Ex. C).

There is no dispute that the warden's representative responded to formal grievance log #1408-125-022 on August 27, 2014; and the response stated:

Your Grievance was received and reviewed.  The following response is provided:

---

[1] Morris admits that he mistakenly dated the grievance August 8, 2014, instead of August 10, 2014 (*see* ECF No. 71 at 2).

You have neglected to attach the informal grievance response as required.

However, it appears as of 8-14-2014, you have been moved to a lower tier, where you should remain until your pass expires.

YOUR GRIEVANCE IS BEING RETURNED WITHOUT FURTHER PROCESSING PER CH 33-103.014(1)(G): You have neglected to attach the informal grievance and response as required. If you desire administrative review of your complaint, you may refile utilizing the proper procedure or correct the stated deficiency and refile if you upon receipt of this notification the filing is within time frames allowable set forth in 33-103.11.

(ECF No. 66 at 5, Ex. A; ECF No. 71 at 2, Ex. C).

There is no dispute that on August 12, 2014, while Morris' first formal grievance was pending, he filed another formal grievance regarding the same issue, log #1408-125-031 (ECF No. 66 at 5, Ex. C; ECF No. 71 at 3, Ex. E). There is also no dispute that Morris stated the following in formal grievance log #1408-125-031:

Today on August the 11th 2014 after feeling dizzyness [sic] and then falling down the stairs while handcuff [sic] and having a seizure afterward, I was advised by Captain Barber when I came through at medical that I would no longer be housed on the upper tier because of my medical pass and the fact that I am a seizure patient. However, on August the 11th after coming back from medical after falling down the stairs, I was again put back in the same cell J1-212 upper tier around 5:49 p.m. give or take a few minutes. I've tried to talk to the two who place [sic] me back in my cell, officers that is, about what Captain Barber said about me being place [sic] on the lower tier, and I was told by these officers to shut up because I am going back in the same cell I came out of. I have obey [sic] all orders given to me by all staff members because I do not want any trouble or to be retaliation [sic] against while still in confinement for writing this grievance as I had no other choice in the matter when my health became a serious issue when still being housed on the upper tier J1-212. As of now all I ask for is for you to please look into this serious matter and please resolve it before I'm seriously hurt again. Thank you very much.

(ECF No. 66, Ex. C; ECF No. 71, Ex. E).

There is no dispute that the warden's representative responded to formal grievance log #1408-125-031 on August 27, 2014; and the response stated:

Your request for Administrative Remedy or Appeal has been received and reviewed.

You have neglected to attach the informal grievance response as required.

As of 8-14-2014, you have been moved to a lower tier, where you should remain until your pass expires. Precautionary measures are in place for your safety.

YOUR GRIEVANCE IS BEING RETURNED WITH OUT FURTHER PROCESSING PER CH 33-103.014(1)(G): You have neglected to attach the informal grievance and response as required. If you desire administrative review of your complaint, you may refile utilizing the proper procedure or correct the stated deficiency and refile if you upon receipt of this notification the filing is within time frames allowable set forth in 33-103.11.

(ECF No. 66, Ex. A; ECF No. 71, Ex. E).

There is no dispute that Morris filed an appeal of formal grievance log #1408-125-022 on September 4, 2014, appeal log #14-6-30389 (ECF No. 66 at 5, Ex. D; ECF No. 71 at 2, Ex. D). Morris' appeal stated the following:

This grievance/appeal is being written concerning grievance log #1408-125-022 filed at N.W.F.R.C. Annex, which was return [sic] with the "Part B" attached response which states your grievance is being return [sic] w/o further processing per Ch-33-103-014(1)(G) stating that I neglected to attach the informal grievance and response as required. On or about the 25th of July 2014 I did file with this institution an informal grievance with a (1) page attachment concerning the issues that I again raised in my formal grievance here at the institutional level but that informal grievance was not responded too [sic] nor returned to me for further processing and/or actions. Therefore, on August 8, 2014, I filed the attached formal grievance to the warden of this institution which was returned w/o processing but does however state that it appears as of 8-14-14 you have been moved to a lower tier, where you should remain until your pass expires. With all due respect I do know how to follow the grievance process but can only do so much when request, informal grievances, etc. are not returned. I can only move forward with the grievance system as I have no other channels to work with. (Remedy sought) [sic] implement a system to where informal grievances are acknowledged such as the formal grievance system and that's with the inmate receiving an acknowledgement [sic] slip by the appropriate party. (See attached grievance and part B response.)

(ECF No. 66, Ex. D; ECF No. 71, Ex. D).

There is no dispute that the Central Office responded to appeal log #14-6-30389 on September 24, 2014, stating:

Your request for administrative review has been received, reviewed, and evaluated.

The institution verified that you are in a low bunk. They were also instructed on the importance of honoring medical passes. Your issue is moot since you were in a lower bunk prior to this grievance.

Based on the foregoing information your appeal is denied.

(ECF No. 66, Ex. D; ECF No. 71, Ex. D).

Defendant Baker contends Morris failed to completely exhaust prior to commencing this lawsuit, because he filed his appeal to the Central Office on September 4, 2014, which was two days after he filed the initial complaint in this case (*see* ECF No. 66 at 6). Baker further contends that Morris' attempt to completely exhaust after he filed this lawsuit is insufficient to cure his failure to exhaust (*see id.* at 6–7).

The dispositive issue in this case is whether Morris was required to file an appeal to the Central Office. The undisputed facts show, as acknowledged in the warden's response to each of Morris' formal grievances, that by the time prison officials responded to each formal grievance, the FDOC had corrected its mistake and resolved the issue raised in Morris' grievances by transferring him to a lower tier cell and implementing "precautionary measures" for his safety (*see* ECF No. 66, Exs. A, C). The grievance procedure requires an inmate to appeal to the Central Office only if his formal grievance is denied and he wishes to obtain further administrative review of his complaint. Here, neither of Morris' formal grievances was denied; rather they were tacitly approved by the warden's investigating Morris' complaint and determining that his complaint had been resolved at the institutional level during the pendency of his formal grievances.[2] Therefore, Morris did not need

---

[2] The warden did not expressly approve or deny either of Morris' formal grievances; instead, each grievance was returned to Morris "without processing" on the ground that he failed to attach his informal grievance and response. This does not present a valid procedural defense for exhaustion purposes. The court accepts as true Morris' assertion that he filed an informal grievance on July 25, 2014, and that he did not receive a response by the 10-day deadline set forth in the grievance procedures; therefore, he proceeded to the next level, i.e., the formal grievance level. Further, Defendant Baker concedes that Morris was not required to file an informal grievance, and that he properly initiated the grievance process with a formal grievance. Therefore, the warden's returning each grievance without processing (based upon Morris' failure to attach his informal grievance and response), yet also investigating Morris' complaint and determining that the conduct of which he complained had been rectified, does not render Morris' claim procedurally barred for exhaustion purposes. *See* Dimanche v. Brown, 783 F.3d 1204 (11th Cir. 2015) (grievance sent by prisoner directly to FDOC's Central Office met conditions for bypassing informal and formal grievance steps at the institutional level under Florida law, and thus prisoner satisfied exhaustion requirement with respect to his § 1983 claims, even though prison officials did not respond to merits of grievance and instead returned it to prisoner without processing; prisoner clearly stated at the beginning of the grievance form that he was filing a grievance of reprisal, indicating he feared for his life and that he was "gassed in confinement for grievances [he] wrote," and clearly stated the reason for

page_10

to proceed any further with the administrative grievance process.  *See* <u>Williams v. Bryant</u>, No. 4:13cv298/MW/CAS, 2015 WL 5190429, at *8 (N.D. Fla. Aug. 18, 2015) (not binding, but recognized as persuasive authority) (concluding, in dicta, that inmate satisfied PLRA's exhaustion requirement regarding claims that prison officials should not have returned him to a particular institution because of the presence of gang members, and that he should be transferred to another institution because he had been attacked, because inmate filed an informal grievance, and prison official's response stated that inmate was approved for a transfer), *Report and Recommendation Adopted by* 2015 WL 5190584 (N.D. Fla. Sept. 4, 2015); <u>Taylor v. Crews</u>, No. 4:14cv98/MW/CAS, 2015 WL 5042721, at *5 (N.D. Fla. July 27, 2015) (concluding that inmate satisfied exhaustion requirement because his grievance was approved, and noting "when an informal or formal grievance is approved, an inmate is not required to move to the next step in the grievance process"), *Report and Recommendation Adopted by* 2015 WL 5042805 (N.D. Fla. Aug. 26, 2015) (unpublished); <u>Smiley v. Lee</u>, No. 5:13cv323/WS/GRJ, 2015 WL 136099, at *1, 3 (N.D. Fla. Jan. 9, 2015) (concluding that inmate satisfied exhaustion requirement because his informal grievance was approved); <u>Fulmore v. Leigh</u>, No. 8:12cv1705-T-30EAJ, 2014 WL 2441864, at *7 (M.D. Fla. May 30, 2014) (concluding that inmate satisfied exhaustion requirement because prison official's response to informal grievance stated, "The issue has already been addressed by the Inspector General's Office.  As action has been initiated, you may consider your request for administrative remedies approved from that standpoint.").

IV.    CONCLUSION

Defendant Baker failed to carry his burden of establishing that Morris failed to completely exhaust his available administrative remedies prior to commencing this § 1983 lawsuit.  The purposes of the PLRA's exhaustion requirement were fulfilled upon Morris' completing the formal grievance step, during which prison officials corrected their mistake and resolved Morris' complaint.  Therefore, Defendant Baker's motion to dismiss should be denied.

Based upon the foregoing, it is respectfully **RECOMMENDED**:

---

bypassing informal and formal grievance steps, namely, his fear that he would be killed if he filed additional grievances at the institutional level (and noting that high-ranking prison officials had participated in retaliatory actions)).

Case No.:  5:14cv211/WS/EMT

That Defendant Baker's motion to dismiss (ECF No. 66) be **DENIED**.

At Pensacola, Florida, this 24th day of November 2015.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**