IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TOMMY L. MORRIS,
Plaintiff,

vs. Case No.: 5:14cv211/WS/EMT

SGT. K.N. BAKER,
Defendant.
_______________________________________/

**REPORT AND RECOMMENDATION**

Plaintiff Tommy L. Morris ("Morris"), an inmate of the Florida Department of Corrections ("FDOC"), proceeds pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983. Morris sues Sgt. Kenneth N. Baker, an FDOC correctional officer, claiming that Baker violated his Eighth Amendment rights by failing to honor his medical pass to be housed in a lower tier cell with a cellmate (*see* ECF No. 51 (Fourth Amended Complaint)). Morris sues Sgt. Baker in his individual capacity only (*see id.* at 7). Presently before the court are the parties' cross-motions for summary judgment (ECF Nos. 87, 102). Each party responded in opposition to the other's

motion (ECF Nos. 90, 105). The parties also submitted evidentiary material in support of their positions (ECF Nos. 87, 90, 105, 111).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); and Fed. R. Civ. P. 72(b). For the reasons set forth below, the court recommends that Defendant Sgt. Baker's motion for summary judgment be granted, and Plaintiff Morris' motion for summary judgment be denied.

I. RELEVANT BACKGROUND and PROCEDURAL HISTORY

In Morris' Fourth Amended Complaint (ECF No. 51), which is the operative pleading, Morris claims that Sgt. Baker violated the Eighth Amendment by deliberately housing him under conditions that were prohibited by his medical pass and posed a substantial risk of serious harm to his health and safety (*id*. at 7). Morris alleges that as a result of Sgt. Baker's conduct, he fell down a stairway, causing physical pain and permanent injuries to his lower back and left knee, for which he is still receiving medical treatment (*id*. at 6, 10). Morris alleges he also suffered psychological damage and mental anguish (*id*. at 6). Morris seeks compensatory and

punitive damages in the amount of $200,000.00 from Sgt. Baker in his individual capacity (*id.*).

On January 5, 2016, adopting the undersigned's recommendation, the District Judge denied Sgt. Baker's motion to dismiss (*see* ECF Nos. 77, 84).[1] Sgt. Baker timely filed his motion for summary judgment on January 15, 2016 (*see* ECF Nos. 83, 87). Morris filed a response in opposition to the motion on January 21, 2016 (*see* ECF No. 90).

Morris filed his motion for summary judgment on February 20, 2016, over one month beyond the deadlines for filing dispositive motions (*see* ECF Nos. 83, 102). Sgt. Baker filed a response in opposition to Morris' motion for summary judgment on March 7, 2016 (ECF No. 105).

On March 10, 2016, the court issued an advisement order concerning summary judgment, which provided the parties with information concerning Rule 56 review and provided Morris an additional thirty (30) days to supplement his response to Sgt. Baker's motion for summary judgment, if he so desired (ECF No. 108). Subsequently, the court granted Morris' request to extend that deadline, and re-set the

[1] Sgt. Baker moved for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that Morris failed to exhaust his administrative remedies prior to filing this lawsuit (ECF No. 66). Morris responded in opposition to the motion to dismiss, arguing that he exhausted all available administrative remedies (ECF No. 71). The undersigned recommended that Sgt. Baker's motion to dismiss be denied (ECF No. 77).

deadline to June 10, 2016 (*see* ECF Nos. 110, 114). Morris filed additional evidentiary material on March 30, 2016 (ECF No. 111).

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

In order to prevail on its motion for summary judgment, the moving party must show that the nonmoving party has no evidence to support his or her case or present affirmative evidence that the nonmoving party will be unable to prove his or her case at trial. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The nonmoving party must show

more than the existence of a "metaphysical doubt" regarding the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Speculation or conjecture from a party cannot create a genuine issue of material fact. *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324. The nonmoving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See* Celotex Corp., *supra*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file, designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him or her. *See* Adickes v. S. H. Kress & Co.,

398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). Nonetheless, the nonmoving party still bears the burden of coming forward with sufficient evidence of every element that he or she must prove. *See* Celotex Corp., 477 U.S. at 317. A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

The Rule 56 standard is not affected by the filing of cross-motions for summary judgment. The court must evaluate each individual motion on its own merits, viewing the evidence in favor of the nonmoving party in each instance. *See* Avocent Huntsville Corp. v. ClearCube Tech., Inc., 443 F. Supp. 2d 1284, 1293–94 (N.D. Ala. 2006); *see also* Shaw v. Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538–39 (5th Cir. 2004) ("Cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720 (3d ed. 1998) ("The court must rule on each party's motion on an individual and separate basis, determining, for

each side, whether a judgment may be entered in accordance with the Rule 56 standard.”).

With regard to the factual positions asserted by the parties, the court must apply the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> . . . .
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (2010). Facts asserted in hearsay statements which are not subject to a hearsay exception, and thus would not be admissible in evidence, are insufficient to show that a fact is genuinely disputed.

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment, or grant summary judgment if the moving party's motion and supporting materials—including the facts considered undisputed—show that the moving party is entitled to it. *See* Fed. R. Civ. P. 56(e)(2, 3) (2010).

B. Eighth Amendment Standard

To succeed in a § 1983 action, "a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." Griffin v. City of Opa–Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). The Eighth Amendment imposes duties on prison officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526–27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984); *see also* Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003). The Supreme Court has developed a two-part analysis governing Eighth Amendment challenges to prison conditions. *See* Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).

> First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). The challenged condition must be "extreme." *Id.* at 9, 112 S. Ct. at 1000. While an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id.* at 35, 113 S. Ct. at 2481. Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.* at 36, 113 S. Ct. at 2482. The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities." Rhodes [v. Chapman], 452 U.S. [337.] 347, 101 S. Ct. [2392,] 2399[, 69 L. Ed. 2d 59 (1981)].

Chandler, 379 F.3d at 1289–90.

The second part of the two-part analysis is the "subjective component":

> [T]he prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. Hudson, 503 U.S. at 8, 112 S. Ct. at 999 (marks and citation omitted). The proper standard is that of deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991). Negligence does not suffice to satisfy this standard, *id.* at 305, 111 S. Ct. at 2328, but a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result," Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct.

> 1970, 1978, 128 L. Ed. 2d 811 (1994). In defining the deliberate indifference standard, the Farmer Court stated: [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837, 114 S. Ct. at 1979. Furthermore, the official may escape liability for known risks "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844, 114 S. Ct. at 1982–83.

Chandler, 379 F.3d at 1289–90. Proof that the defendant should have perceived the risk, but did not, is insufficient. Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing Farmer, 511 U.S. at 838); Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996) (the official must have a subjectively "sufficiently culpable state of mind," and "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not . . . .'") (quoting Farmer, 511 U.S. at 834).

Thus, to survive summary judgment on his section 1983, Eighth Amendment claim, Morris is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) Sgt. Baker's deliberate indifference to that risk; and (3) causation. *See* Hale v. Tallapoosa Cnty., 50 F. 3d 1579, 1582 (11th Cir. 1995) (citations omitted).

C. Qualified Immunity Standard

Defendant Sgt. Baker asserts he is entitled to qualified immunity because Morris has not established that Baker violated his constitutional rights (ECF No. 87 at 6–10). "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, — U.S. —, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)) (additional internal quotation marks and citation omitted). Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability; hence, liability attaches only if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. McElligott v. Foley, 182 F.3d 1248, 1260 (11th Cir. 1999) (citing United States v. Lanier, 520 U.S. 259, 270, 117 S. Ct. 1219, 137 L. Ed .2d 432 (1997)).

To receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). "Once the defendant establishes that he was acting within his

discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* at 1194.

The Supreme Court has established a two-pronged test for evaluating a claim of qualified immunity: (1) whether a constitutional right has been violated on the facts alleged; and (2) whether the right was "clearly established." Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). "A right may be clearly established for qualified immunity purposes in one of three ways: '(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" Maddox v. Stephens, 727 F.3d 1109, 1121 (11th Cir. 2013) (quoting Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1291–92 (11th Cir. 2009)).

The court exercises its discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand. *See* Pearson, 555 U.S. at 236. The court may grant qualified immunity if the plaintiff fails to carry his burden on either of the two prongs. *See, e.g.*, Pearson at 243–45 (granting qualified immunity after evaluating only Saucier's second prong).

## III. DEFENDANT SGT. BAKER'S MOTION FOR SUMMARY JUDGMENT

### A. Material Facts

For purposes of considering Defendant Sgt. Baker's motion for summary judgment, the court is required to view the facts in the light most favorable to Morris, the nonmoving party *See* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). The court does so here, taking those facts from Morris' verified Fourth Amended Complaint (ECF No. 51) and summary judgment materials of record. *See* Perry v. Thompson, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding that specific facts pled in a sworn complaint and repeated in a separate affidavit must be considered in opposition to summary judgment); Fed. R. Civ. P. 56(c). Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. *See* Montoute v. Carr, 114 F.3d 181, 182 (11th Cir. 1997). Applying these standards, the court conveys the following as the material facts for purposes of Defendant Baker's motion for summary judgment. At the time of the events giving rise to this action, Morris was housed at the Northwest Florida Reception Center ("NWFRC") (*see* ECF No. 51, Fourth Amended Complaint at 5–6, 8–10). Morris suffers from a medical condition which renders him susceptible to seizures (*id.* at 5). A physician at the NWFRC issued a Health Slip/Pass ("medical

pass"), effective February 19, 2014 to February 19, 2015, authorizing Morris for a low/bottom bunk, and restricting his housing to a cell on the low tier occupied by another inmate (ECF No. 90, Ex. A, FDOC Health Slip/Pass). Defendant Sgt. Baker was assigned to the NWFRC as the Protective Management Supervisor during the time of the events alleged in the Fourth Amended Complaint (ECF No. 87-1, Declaration of Sergeant Baker ¶ 1). According to operations at the NWFRC, the Protective Management Supervisor is not routinely assigned to the confinement housing supervisor position, unless staffing needs dictate such (Baker Decl. ¶ 3).

On June 27, 2014, Sgt. Baker assigned Morris from a low bunk in a cell on the low tier of the Protective Management Unit (cell J3103L) to the Administrative Confinement Unit (Quad 1 of J-dormitory) (ECF No. 87-3, FDOC Internal Movements record for Tommy Morris; ECF No. 51, Fourth Amended Complaint at 5; ECF No. 90, Morris Aff. ¶ 2). Upon Morris' assignment to the Administrative Confinement Unit, the housing supervisor or officer in charge of the Administrative Confinement Unit assigned Morris to a cell on the upper tier (cell J1212) (*id.*). *See* Fla. Admin. Code r. 33-602.220(1)(d) (defining "Housing Supervisor" of Administrative Confinement as "correctional officer sergeant, or above, who is in charge of the administrative confinement unit for a particular shift"). Sgt. Baker was

not the Officer in Charge of the Administrative Confinement Unit at any time from June 27, 2014 through August 28, 2014 (ECF No. 87-1, Baker Decl. ¶ 2). Sgt. Baker was not responsible for Morris' bed assignment at any time that Morris was assigned to the Administrative Confinement Unit (*id.*). Sgt. Baker did not have authority to direct anyone in the Administrative Confinement Unit as to the cell in which to house Morris while he was assigned to the Administrative Confinement Unit (*id.*). Sgt. Baker did not tell, nor did he have the authority to tell, anyone in the Administrative Confinement Unit in which cell to place Morris (*id.*). Sgt. Baker did not have the authority to move Morris to a cell on the low tier when Morris was assigned to the Administrative Confinement Unit (*id.*).[2]

On July 11, 2014, Morris was released from the Administrative Confinement Unit and returned to the Protective Management Unit (Quad 3) (ECF No. 87-3, FDOC Internal Movements record for Tommy Morris; ECF No. 51, Fourth Amended

---

[2] Morris attempted to create a genuine issue of material fact as to Sgt. Baker's factual assertions regarding his lack of authority to make housing assignments in the Administrative Confinement Unit, by submitting his own affidavit in response to Sgt. Baker's affidavit. In Morris' affidavit, he states that Baker "had the power to have plaintiff housed on a lower tier" in the Administrative Confinement Unit (*see* ECF No. 90, Affidavit of Tommy Morris ¶ 2). However, Morris failed to show that he has personal knowledge of the extent of Sgt. Baker's authority with regard to housing assignments in the Administrative Confinement Unit, a unit to which Sgt. Baker was not assigned during the relevant time period. Morris' assertion of fact is thus not properly supported, and insufficient to create a genuine issue of fact as to Sgt. Baker's factual assertion that he lacked authority to make housing assignments in the Administrative Confinement Unit during the relevant time period.

Complaint at 6; ECF No. 90, Morris Aff. ¶ 3). Sgt. Baker, as Protective Management Supervisor, assigned Morris to a cell on the upper tier without a cellmate (J3204) (ECF No. 87-3, FDOC Internal Movements record for Tommy Morris; ECF No. 51, Fourth Amended Complaint at 6, 8; ECF No. 90, Morris Aff. ¶ 3). Sgt. Baker knew that Morris was a "seizure patient," and Morris showed Sgt. Baker his medical pass (ECF No. 51, Fourth Amended Complaint at 6; ECF No. 90, Morris Aff. ¶ 3). Sgt. Baker still housed Morris alone in an upper tier cell (*id.*). At least three cells on the lower tier were available with only one inmate in each, including cell J3102 (ECF No. 51, Fourth Amended Complaint at 6; ECF No. 90, Morris Aff. ¶ 4). Sgt. Baker told Morris that if he did not like his housing assignment, he could file a grievance (*id.*).[3] Morris was housed on the upper tier for five days, and alone for four out of those five days (*id.*).

On July 16, 2014, Sgt. Baker again assigned Morris to the Administrative Confinement Unit (ECF No. 87-3, FDOC Internal Movements record for Tommy Morris; ECF No. 51, Fourth Amended Complaint at 8; ECF No. 90, Morris Aff. ¶ 5).

[3] In Morris' cross-motion for summary judgment, Morris changed his allegation regarding Sgt. Baker's response when Morris showed Baker his medical pass. Morris' new allegation was that Sgt. Baker responded that if Morris did not like his cell assignment, Baker would assign him to the Administrative Confinement Unit (*see* ECF No. 102 at 2). Morris' cross-motion for summary judgment did not include a declaration, made under penalty of perjury, that the factual assertions included therein were true and correct (*see id.*). Therefore, the factual assertions included in the cross-motion are not properly considered summary judgment evidence under Rule 56(c).

Upon Morris' assignment to the Administrative Confinement Unit, the housing supervisor, apparently Sgt. Brandon Whitener, ordered Morris to be assigned to a cell on the upper tier (cell J1212) (ECF No. 87-3, FDOC Internal Movements record for Tommy Morris; ECF No. 51, Fourth Amended Complaint at 8; Morris Dep. 31:10–32:15, Nov. 19, 2015; ECF No. 98-3, FDOC Housing Unit Log at 78). Sgt. Baker was not assigned as the housing supervisor of the Administrative Confinement Unit on July 16, 2014 (ECF No. 87-1, Baker Decl. ¶ 4). Sgt. Baker was not responsible for, nor did he make the cell assignment for, Morris in the Administrative Confinement Unit on July 16, 2014 (*id.*).

On August 11, 2014, while Morris was housed in the Administrative Confinement Unit, Morris declared a medical emergency because he was dizzy and felt faint (ECF No. 51, Fourth Amended Complaint at 5, 9; ECF No. 90, Morris Aff. ¶ 6). Two officers handcuffed him to take him to the medical department (ECF No. 51, Fourth Amended Complaint at 9). The next thing Morris recalls is waking up face down and in pain on the floor of the low tier (*id.*). Morris was told that he fainted and fell down the stairs while handcuffed behind his back, and that he hit the floor very hard and had a seizure (*id.*). Morris was unable to move due to the pain running through his neck, lower back, and left knee (*id.*). Morris was escorted to the medical

department on a stretcher (*id.*). Even after his fall, he was housed in a cell on the upper tier in the Administrative Confinement Unit for three days, until he was finally and permanently moved to a cell on the low tier (cell J1114) on August 14, 2014 (ECF No. 87-3, FDOC Internal Movements record for Tommy Morris; ECF No. 51, Fourth Amended Complaint at 10).

As a result of Morris' fall down the staircase, he suffered injury to his lower back and left knee, mental anguish, and "psychological damages" (ECF No. 51, Fourth Amended Complaint at 8–10).

B. Analysis

There is no dispute that Sgt. Baker was acting within the scope of his discretionary authority at all times relevant to this action. Sgt. Baker argues that he is entitled to qualified immunity, because there was no constitutional violation (ECF No. 87 at 6–10). He does not contend that his conduct, if unconstitutional, did not violate clearly established law (*see id.*). Therefore, the court will address only whether Sgt. Baker's conduct violated Morris' constitutional rights.

1. Morris' Housing on the Upper Tier in the Protective Management Unit

The undisputed facts show that Sgt. Baker knew that Morris was a "seizure patient," and Baker knew that the medical department had authorized Morris for a

low/bottom bunk, and restricted Morris to housing in a cell on the low tier and with a cellmate (i.e., not alone). The undisputed facts additionally show that Sgt. Baker was the Housing Supervisor of the Protective Management Unit from May of 2014 to August of 2014. Viewing the facts in the light most favorable to Morris, a reasonable jury could conclude that Sgt. Baker ordered Morris to be housed in a cell on the upper tier of the Protective Management Unit from July 11–16, 2014, and without a cellmate for four out of those five days.

However, the evidence, viewed in the light most favorable to Morris, is insufficient to reasonably suggest deliberate indifference on Sgt. Baker's part. A defendant's knowledge of a medical pass, without more, is insufficient to establish deliberate indifference. *See*, *e.g.*, Redding v. Georgia, 557 F. App'x 840, 844 (11th Cir. Feb. 18, 2014) (holding that plaintiff's allegation that prison officials assigned him to a top bunk contrary to his medical profile indicating the need for a bottom bunk failed to state a plausible Eighth Amendment claim; "It may have been negligent to assign Redding a bunk contrary to his profile, but an Eighth Amendment claim requires conduct rising to a level above even gross negligence. This was not shown here, as Redding did not allege facts showing a culpable state of mind on the defendant's part." (citation omitted)).

Further, although Sgt. Baker knew that Morris was a "seizure patient," Morris does not allege any facts suggesting that at the time Sgt. Baker housed Morris alone on the upper tier in the Protective Management Unit, that Baker was subjectively aware that doing so placed Morris at substantial risk of serious harm. For example, Morris does not allege facts suggesting that Sgt. Baker knew that Morris was susceptible to dizziness or fainting; nor does Morris allege facts suggesting that Baker knew that Morris was unable to safely negotiate stairs. Construing the summary judgment evidence in the light most favorable to Morris, there is insufficient evidence from which a reasonably jury could infer that Sgt. Baker had subjective knowledge that at the time Morris was housed in the Protective Management Unit, housing him alone on the upper tier placed Morris at a substantial risk of serious harm. *See, e.g.*, Hall v. Moore, No. 3:14cv140/MCR/CJK, 2015 WL 9946410, at *9 (N.D. Fla. Dec. 29, 2015) (unpublished) (in § 1983 action brought by prisoner claiming that three officers were deliberately indifferent to his health and safety by ignoring a prescribed medical pass restricting him to a low-tier cell due to a medical condition affecting his leg, and by requiring him to climb and descend stairs while in hand restraints, one particular officer was entitled to summary judgment where the facts did not support an inference that the particular officer knew that the prisoner was at substantial risk

of serious harm by being housed on the upper tier, despite the officer's knowledge that the prisoner had medical pass for a low tier cell, where the officer never witnessed any action by the prisoner indicating that he was unable to safely negotiate stairs), *Report and Recommendation Adopted by* 2016 WL 394012 (N.D. Fla. Feb. 1, 2016).[4] Therefore, Sgt. Baker is entitled to qualified immunity on Morris' claim concerning Baker's housing him on the upper tier of the Protective Management Unit from July 11–16, 2014.

2. <u>Morris' Housing on the Upper Tier in the Administrative Confinement Unit</u>

It is undisputed that Morris was moved from the Protective Management Unit to the Administrative Confinement Unit on June 27, 2014, and that Morris was housed there until July 11, 2014, when he was returned to the Protective Management Unit. It is also undisputed that on July 16, 2014, Morris was again moved from the Protective Management Unit to the Administrative Confinement Unit. It is undisputed that Morris was housed in the Administrative Confinement Unit on August 11, 2014, when he fainted and fell down the staircase, causing his injuries. Sgt. Baker presented evidence that he (1) was not the Officer in Charge of the Administrative

[4] The undersigned recognizes unpublished cases of the Eleventh Circuit and this district court for persuasive authority and is aware that they are not binding precedent.

Confinement Unit at any time from June 27, 2014 through August 28, 2014, (2) was not responsible for Morris' bed assignment at any time that Morris was assigned to the Administrative Confinement Unit, (3) did not have authority to direct anyone in the Administrative Confinement Unit as to the cell in which to house Morris while he was assigned to the Administrative Confinement Unit, (4) did not tell, nor did he have the authority to tell, anyone in the Administrative Confinement Unit in which cell to place Morris, (5) did not have the authority to move Morris to a cell on the low tier when Morris was assigned to the Administrative Confinement Unit, (6) was not assigned as the housing supervisor of the Administrative Confinement Unit on July 16, 2014, and (7) was not responsible for, nor did he make the cell assignment for, Morris in the Administrative Confinement Unit on July 16, 2014. Morris has not presented sufficient evidence to create a genuine issue of material fact as to any of those factual assertions. Sgt. Baker may not be held liable under § 1983 for Morris' housing assignment in a housing unit over which he had no responsibility or authority; therefore, Morris' Eighth Amendment claims fails on not only the deliberate indifference prong (for the reasons discussed *supra* in Section III.B.1.), but also the causation prong.[5] *See, e.g.*, May v. Hetzel, 630 F. App'x 994 (11th Cir. 2015)

[5] Although Morris alleged new facts in his own affidavit filed in response to Sgt. Baker's motion for summary judgment (specifically, that just prior to his fainting and falling down the

(unpublished) ("A claimant must prove that the prison official possessed both knowledge of the danger and the means to cure the danger.") (citation omitted); Bugge v. Roberts, 430 F. App'x 753, 760 (11th Cir. 2011) (unpublished) (defendant officers were entitled to summary judgment on claim that officers' deliberate indifference to dangerous prison conditions caused attack that led to prisoner's death, where prisoner presented no evidence that any defendant officer, except for the defendant warden, had any responsibility for conditions at the prison, or could have taken reasonable steps to lessen the substantial risk of serious harm that existed there; therefore,

---

staircase while housed in the Administrative Confinement Unit on August 11, 2014, he informed Sgt. Baker, who had entered the Administrative Confinement Unit to "check on" some of the other Protective Management inmates who were being housed in the Confinement Unit, that he (Morris) had declared a medical emergency because he was feeling faint and dizzy), a plaintiff may not convert a count that fails to state a claim into a count that states a claim by alleging new facts in response to a defendant's summary judgment motion, especially where he made no showing that this evidence could not have been presented previously. *See* GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012) (declining to consider additional facts first raised in summary judgment briefing).

Moreover, these facts still do not suggest deliberate indifference. Morris admits that just prior to speaking with Sgt. Baker, Morris advised two officers assigned to the Administrative Confinement Unit that he was not feeling well, that he was a "seizure patient," and that he had a medical pass for housing on a low tier and with a cellmate (*see* ECF No. 111, Morris Aff., p. 1). And Morris admits that approximately twenty (20) minutes after Sgt. Baker walked away, the same two officers assigned to the Administrative Confinement Unit came to his cell to escort him to the on-duty nurse (*see* ECF No. 111, Morris Aff., p. 2). It was apparently during this escort that Morris fainted and fell down the staircase. Even in light of Morris' newly alleged facts, there is insufficient evidence from which a reasonable jury could infer a causal connection between Sgt. Baker's actions and the Eighth Amendment violation. The new evidence still does not change the fact that Sgt. Baker was not responsible for the housing decisions in the Administrative Confinement Unit, nor did he have any authority to effect a change in Morris' housing assignment while Morris was housed in the Administrative Confinement Unit.

prisoner's claims against officers failed on the causation prong: there was no evidence connecting them to the relevant prison conditions or prisoner's murder). Therefore, Sgt. Baker is entitled to qualified immunity on Morris' Eighth Amendment claim concerning his being housed on the upper tier of the Administrative Confinement Unit, which is where he was housed when he fell down the staircase causing his injuries.

IV. MORRIS' MOTION FOR SUMMARY JUDGMENT

Morris argues he is entitled to summary judgment on his Eighth Amendment claim (ECF No. 102). His arguments are largely focused on his assertion that even though Sgt. Baker was only in charge of the Protective Management Unit and not the Administrative Confinement Unit, Baker still had the power to have Morris assigned to a cell on the low tier (*see id.*). Morris also argues that Sgt. Baker was aware that by allowing Morris to be housed on the upper tier, Morris would, in time, suffer physical harm (*id.*).

As discussed *supra*, construing the summary judgment evidence in the light most favorable to Morris, there is insufficient evidence from which a reasonably jury could infer that Sgt. Baker had subjective knowledge that at the time Morris was housed in the Protective Management Unit, housing him on the upper tier placed

Morris at a substantial risk of serious harm. Additionally, there is insufficient evidence from which a reasonably jury could infer that Sgt. Baker was responsible for determining Morris' housing assignment in the Administrative Confinement Unit, or that Baker had authority to change Morris' housing assignment in the Administrative Confinement Unit. Therefore, Morris is not entitled to summary judgment in his favor.

V. CONCLUSION

The material undisputed facts show that summary judgment should be granted to Sgt. Baker as a matter of law, and that Morris is not entitled to judgment as a matter of law.

Based upon the foregoing, it is respectfully **RECOMMENDED**:

1. That Defendant Sgt. Baker's motion for summary judgment (ECF No. 87) be **GRANTED**;

2. That Plaintiff Morris' motion for summary judgment (ECF No. 102) be **DENIED**; and

3. That the clerk be directed to enter judgment in favor of Defendant Sgt. Baker and against Plaintiff Morris and close the file.

At Pensacola, Florida, this 14th day of July 2016.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**